UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DAVID JESSE JAMES WEIR,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,<br><br>Defendant. | CASE NO. 15-cv-05672 JRC<br><br>ORDER ON PLAINTIFF'S COMPLAINT |

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S. Magistrate Judge and Consent Form, Dkt. 6; Consent to Proceed Before a United States Magistrate Judge, Dkt. 7). This matter has been fully briefed (*see* Dkt. 17, 18, 19).

After considering and reviewing the record, the Court concludes that the ALJ did not err when he resolved conflicts in the medical evidence and credibility issues. The ALJ's finding that the medical opinion of Dr. Griztka is "inconsistent with the balance of

the medical evidence," (AR. 105), is based on substantial evidence in the record as a whole, as discussed in the ALJ's detailed summary of the medical evidence. In addition, the ALJ provided multiple reasons for failing to credit fully plaintiff's credibility, such as that plaintiff's medical record "includes evidence suggesting that the claimant exaggerated symptoms and limitations" (AR. 102), that plaintiff left work for reasons other than his impairments, and that the medical evidence was not consistent with his allegations.

Therefore, this matter is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff, DAVID JESSE JAMES WEIR, was born in 1978 and was 30 years old on the alleged date of disability onset of March 31, 2008 (*see* AR. 287-92, 293-99). Plaintiff completed the ninth grade in school, and has not obtained his GED or had any other training or schooling (AR. 119). Plaintiff has work history in construction and fishing (AR. 120). His last job was driving, pulling a trailer (AR. 120-21).

According to the ALJ, plaintiff has at least the severe impairments of "degenerative disc disease of the lumbar spine, status post right knee surgeries, status post right rotator cuff repair, obesity, and status post ulnar nerve injury (20 CFR 404.1520(c) and 416.920(c))" (AR. 94).

At the time of the hearing, plaintiff was living in a house with his girlfriend and her two children (AR. 127).

## PROCEDURAL HISTORY

Plaintiff's applications for disability insurance ("DIB") benefits pursuant to 42 U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act were denied initially and following reconsideration (*see* AR. 150-62, 163-75, 178-90, 191-203). Plaintiff's requested hearing was held before Administrative Law Judge Gary Elliott ("the ALJ") on May 30, 2014 (*see* AR. 113-47). On July 14, 2014, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* AR. 89-112).

In plaintiff's Opening Brief, plaintiff raises the following issues:  (1) Whether or not the ALJ provided sufficient reasons to discredit plaintiff; (2) Whether or not the ALJ provided sufficient reasons to reject Dr. Gritzka's opinion; and (3) Whether or not given these errors, substantial evidence supported the RFC, hypothetical questions and step five findings (*see* Dkt. 17, p. 1).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## DISCUSSION

**(1) Whether or not the ALJ provided sufficient reasons to discredit plaintiff.**

The disability determination services ("DDS") office referred plaintiff's claim for further investigation to the Cooperative Disability Investigations Unit ("CDIU") because of "inconsistencies in [his] allegations and presentations throughout the file" (AR. 1011). According to the summary report of the investigation, the "investigation found that [plaintiff] was doing work, but for cash . . . . like fixing and selling cars, cutting wood, [and] working on boats" (*id*.). The detective "observed [plaintiff] and did not find that he had physical problems at all; he walks normally; he bent over without difficulty; [and] he went up and down stairs without any problems" (*id*.). According to the report, "[no] witnesses had ever seen him use any type of assistive device" (*id*.).

Plaintiff contends without citation that in the "circumstance of conflicting evidence of the claimant and an interested, non-objective witness, such as the CDIU investigator, plaintiff's contradictory answers should be given credence, especially given their conformity with Dr. Gritzka's findings" (Dkt. 17, pp. 10-11). However, the ALJ is responsible for determining credibility. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*citing Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). According to the Ninth Circuit, if the evidence "is susceptible to more than one rational interpretation," including one that supports the decision of the Commissioner, the Commissioner's conclusion "must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (*citing Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999)).

In addition, the evidence from the CDIU summary report was not the only rationale relied on by the ALJ for his failure to credit fully plaintiff's credibility. For the reasons discussed below, the Court concludes that the ALJ provided specific, clear and convincing reasons for failing to credit fully plaintiff's credibility.

If an ALJ rejects the testimony of a claimant once an underlying impairment has been established, the ALJ must support the rejection "by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (*citing Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.1993)); *see also Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014) ("There is no conflict in the caselaw, and we reject the government's argument that *Bunnell* excised the "clear and convincing" requirement"); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*citing Bunnell v. Sullivan*, *supra*, 947 F.2d at 343, 346-47).

Here, as already noted, the ALJ relied in part on the report from the CDIU investigation regarding inconsistencies between plaintiff's allegations and the observations of the detective, including plaintiff's going up and down the stairs without difficulty and without an assistive device and his working for cash. However, even without the results from that CDIU investigation, the ALJ's rationale regarding plaintiff's credibility is specific, clear and convincing. The ALJ also noted that plaintiff's medical record "includes evidence suggesting that the claimant exaggerated symptoms and limitations" (AR. 102). The ALJ provided support for this finding, noting that medical examiner, Dr. Mark Manoso, M.D., noted the claimant had "perceived limitations that do not match his objective findings" (*id.* (*citing* AR. 531)). Similarly, the ALJ noted that a

physical capacity examiner "describes non-organic signs as well as a moderate disability conviction with unreliable results in positive Waddell's findings" (AR. 615; *see also* AR. 574 ("overall test findings in combination with clinical observations suggest the presence of minor inconsistencies to the reliability and accuracy of the client's reports of pain and disability")). The Court concludes that the ALJ's finding that plaintiff's medical record "includes evidence suggesting that the claimant exaggerated symptoms and limitations" is a finding based on substantial evidence in the record as a whole (AR. 102).

The ALJ also noted that plaintiff reported working as a construction driver in June 2010 through July 2010 (*id.* (*citing* Ex. 1E)). The ALJ noted plaintiff's testimony that he stopped work because his employer wanted him to do additional work duties such as hanging drywall (*id.*). As noted by defendant, the fact that a claimant stopped work for reasons other than his impairments is properly considered as a factor when an ALJ does not credit fully a claimant's testimony (Dkt. 18, p. 8 (*citing Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (citations omitted))).

Finally, the Court notes that the ALJ found that plaintiff's allegations were inconsistent with the medical evidence (AR. 101). As summarized by the ALJ:

> [Plaintiff] alleged he was unable to sit for more than five minutes at a time. He alleged he could walk half a block before needing to rest for 10 to 20 minutes. He testified he could stand for no more than 30 minutes at a time. He testified that his "arms go numb all the time." However, Dr. Ostler found he had a well-coordinated gait and full strength in the upper extremities (internal citation to AR. 415-16). Dr. Manoso found he had no discomfort over the cervical, thoracic and lumbar spine, intact sensation and near full strength in the lower extremities, and full strength in the upper extremities (internal citation to AR. 528-29). Dr. Bodow found he had a smooth gait, intact sensation and strength in the upper extremities, and intact sensation and near full strength of the lower

      extremities (internal citation to AR. 625-27). Dr. Partlow found he had a slight antalgic limp and full strength in the upper and lower extremities (internal citation to AR. 659-60). Diagnostic imaging of the cervical, thoracic, and lumbar spine, right hip, and right knee were essentially unremarkable (internal citation to AR. 398, 444, 631, 857-59, 1112, 1121, 1131).

(AR. 101). These findings are based on substantial evidence in the record as a whole. For example, on examination on May 16, 2012, plaintiff demonstrated 5/5 "motor strength of the lower extremities," and 5/5 "motor strength in the upper extremities" (AR. 660). Similarly, the interpretation of plaintiff's February, 2012 MRI was "minimal degenerative disc disease . . . . no evidence of traumatic injury to the osseous elements [and] no significant canal stenosis or neural foraminal narrowing" (AR. 631).

      For the reasons stated and based on the record as a whole, the Court concludes that the ALJ provided clear and convincing reasons supported by substantial evidence in the record for his failure to credit fully plaintiff's allegations and credibility.

      **(2)    Whether or not the ALJ provided sufficient reasons to reject Dr. Thomas Gritzka, M.D.'s opinion.**

      Plaintiff contends that the ALJ erred when he gave little weight to the contradicted opinions of examining doctor, Dr. Thomas Gritzka, M.D. Defendant contends that there is no error.

      When an opinion from an examining doctor is contradicted by other medical opinions, the examining doctor's opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir.

1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). That is what the ALJ did here.

Dr. Gritzka examined plaintiff in March, 2014 (AR. 1095-1107). Plaintiff complained of pain, walked with a right antalgic limp and used a cane in his right hand (AR. 100 (*citing* AR. 1096)). Among other opinions, Dr. Gritzke opined that plaintiff likely would have suffered absenteeism more than 2 days a month even had he attempted only sedentary work, and opined that he would have been "off task" for 20% or more of the time (AR. 1107).

The ALJ noted that Dr. Gritzka's opinion was inconsistent with the opinions of Drs. Virji and Zechmann (AR. 105). As noted by the ALJ, Dr. Alnoor Virji, M.D. "opined the claimant could perform light work with postural restrictions and occasional overhead reaching with the right upper extremity" (AR. 104 (*citing* Exs. 7A and 8A)). Although Dr. Virji did not examine plaintiff, the ALJ found that this opinion was more consistent with the clinical findings of treatment providers and examiners and "with the fairly unremarkable diagnostic imaging of his cervical, thoracic and lumbar spine, right hip, and right knee" (*id.*).

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick*, *surpa,* 157 F.3d at 722 (*citing Andrews*, *supra,* 53 F.3d at 1039). It is not the job of the court to reweigh the evidence: If the

ORDER ON PLAINTIFF'S COMPLAINT - 8

1  evidence "is susceptible to more than one rational interpretation," including one that

2  supports the decision of the Commissioner, the Commissioner's conclusion "must be

3  upheld." *Thomas*, *supra*, 278 F.3d at 954 (*citing Morgan, supra,* 169 F.3d at 599, 601).

4  Such is the circumstance here.

5        The ALJ found that the medical opinion of Dr. Griztka is "inconsistent with the

6  balance of the medical evidence" (AR. 105). This finding is based on substantial

7  evidence in the record as a whole, and is backed by the ALJ discussion of the medical

8  evidence.

9        For example, the Court already has quoted the ALJ's discussion of some of the

10  findings by doctors performing examinations of plaintiff in the context of inconsistency

11  with plaintiff's allegations, *see supra*, section 1. Noted in that quote were the findings on

12  examination of a well-coordinated gait and full strength in the upper extremities (Dr.

13  Ostler, AR. 415-16); no discomfort over the cervical, thoracic and lumbar spine, intact

14  sensation and near full strength in the lower extremities, and full strength in the upper

15  extremities (Dr. Manoso, AR. 528-29); a smooth gait, intact sensation and strength in the

16  upper extremities, and intact sensation and near full strength of the lower extremities (Dr.

17  Bodow, AR. 625-27); a slight antalgic limp and full strength in the upper and lower

18  extremities (Dr. Partlow, AR. 659-60); and unremarkable diagnostic imaging of the

19  cervical, thoracic, and lumbar spine, right hip, and right knee (AR. 398, 444, 631, 857-59,

20  1112, 1121, 1131).

21        The ALJ also discussed the finding by Dr. Robert Padilla, M.D. of "normal

22  strength and sensation in the upper and lower extremeties" (AR. 97); and the findings of

"smooth pain free range of motion" in his knee, and "smooth pain free range of motion of the elbow" after left elbow subcutaneous ulnar nerve transposition, in January, 2009 (Dr. Thomas Helpenstell, M.D., AR. 98). The ALJ noted multiple occasions of negative straight leg raise tests (AR. 98 (Dr. Manoso), 99 (Dr. Partlow)) and a normal electrodiagnostic study of the lower extremities (AR. 100 (*citing* AR. 1067-68)). The ALJ also noted that in "March 2009, examining orthopedist, Dr. Manoso, opined that claimant could perform work as a painter, fast-foods worker, and wind-generating electric power installer" (AR. 102 (citations omitted)); and that in "February 2012, medical examiner, Dr. Bodow, opined there were no physical findings that would keep the claimant from returning to work," and noted various jobs that he opined plaintiff could perform, such as driver, pizza crew member and wind generating electric power installer (AR. 103 (citations omitted)). The ALJ also noted and gave great weight to the opinion of Dr. Virji that plaintiff could perform light work with postural restrictions and occasional overhead reaching; and to the opinion in "September 2013, [of] treatment provider, Dr. Zechmann, [who] opined the claimant could do light duty activities" (AR. 104 (citation omitted)).

For the reasons stated and based on the record as a whole, the Court concludes that the ALJ's finding that the medical opinion of Dr. Griztka was "inconsistent with the balance of the medical evidence" (AR. 105) is "specific and legitimate [rationale] that [is] supported by substantial evidence in the record," *Lester*, *supra,* 81 F.3d at 830-31 (*citing Andrews*, *supra,* 53 F.3d at 1043; *Murray*, *supra,* 722 F.2d at 502), in the context of the ALJ's "detailed and thorough summary of the facts and conflicting clinical evidence, []

1 | his interpretation thereof, and [his] findings." *Reddick*, *supra,* 157 F.3d at 725 (*citing*

2 | *Magallanes*, *supra,* 881 F.2d at 751). The ALJ did not commit harmful legal error in his

3 | analysis of the medical evidence offered by Dr. Griztka.

(3) **Whether or not given these errors, substantial evidence supported the RFC, hypothetical questions and step five findings.**

Because the Court has found that the ALJ has not committed harmful error, this argument is not relevant.

## CONCLUSION

Based on the stated reasons and the relevant record, the Court **ORDERS** that this matter be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

**JUDGMENT** should be for defendant and the case should be closed.

Dated this 28th day of March, 2016.

J. Richard Creatura
United States Magistrate Judge